**E-FILED**
Monday, 27 February, 2017  06:39:56 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

TODD ALLEN,

      Plaintiff,

v.

CITY OF MOLINE, ALDERMAN
STEPHANIE ACRI, individually,
ALDERMAN JOHN ZELNIO,
individually, ALDERMAN MIKE
WENDT, individually, ALDERMAN
DAVID PARKER, individually, KEVIN
IRBY, individually, SCOTT HOUZENGA,
individually,

      Defendants.

No.

JURY TRIAL DEMANDED

## <u>COMPLAINT</u>

Plaintiff TODD ALLEN, through his undersigned counsel, seeks redress against Defendants CITY OF MOLINE, STEPHANIE ACRI, individually, JOHN ZELNIO, individually, MIKE WENDT, individually, DAVID PARKER, individually, KEVIN IRBY, individually, SCOTT HOUZENGA, individually, and states as follows:

### *Introduction*

1.    Plaintiff Todd Allen seeks redress for violations of his rights of freedom of familial association through the First and/or Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 (Count I); for violations of his rights of freedom of political affiliation through the First Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 (Count II); for conspiracy to violate Plaintiff's

rights (Count III); and for defamation in violation of Illinois law (Count IV). Plaintiffs seek declaratory and injunctive relief as well as damages.

2.  Defendants' conduct as alleged herein constitutes a continuing violation and was and is part of an ongoing pattern of harassment, discrimination, and retaliation against Plaintiff.

3.  Defendants' actions reflect a systematic policy and practice of discrimination and retaliation and constitute a continuing violation.

## Jurisdiction

4.  This Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

5.  Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) because Plaintiff and all of the Defendants either reside in this district or have their principal place of business in this district, and all events giving rise to Plaintiff's claims occurred within this district.

## The Parties

6.  Plaintiff Todd Allen ("Allen") is a resident in this judicial district.

7.  Plaintiff Todd Allen has been an exceptional employee of the Moline Fire Department, fighting for the safety of the citizens of Moline and surrounding communities.

8.     Some of Plaintiff's successes and contributions to the City of Moline include, but are not limited to, the following: managing a $9.5 million budget and all fire operations from a 24/48-work schedule; acquiring grants for a new 30' fire boat, EMS patient lift systems, and new state of the art EMS equipment; ensuring proper Illinois Department of Public Health ("IDPH") certification of members; finding $135,000 in new money for the Moline Fire Department, and securing and utilizing nearly $550,000 in new rescue training for the department, and $250,000 in state validated USAR equipment, staged in the City of Moline; and maintaining and helping to implement an integrated tactical medic program with the medics on SWAT teams to help during mass shooting and warrants. Plaintiff has also been part of the new movement for the fire service understanding alternative energy and has taught this program to all major fire departments in Missouri, Iowa, Nebraska, Kansas, and Oklahoma.

9.     Defendant City of Moline ("Moline") is a municipality incorporated under the laws of the State of Illinois.

10.    At all relevant times, Defendant Moline has been continuously engaged in an industry affecting commerce.

11.    At all relevant times, Defendants STEPHANIE ACRI ("Acri"), JOHN ZELNIO ("Zelnio"), MICHAEL WENDT ("Wendt") and DAVID PARKER ("Parker") served in the elected positions of Alderman of the City of Moline. Defendants Acri, Wendt, Zelnio, and Parker are sued in their individual capacity.  Defendants Acri,

Zelnio, Wendt, and Parker were and remain final policy makers with respect to various departmental matters at issue here.

12.    Defendant City of Moline has employed Defendant Kevin Irby ("Irby") at all times material hereto. Defendant Irby currently holds the position of Battalion Chief with the City of Moline Fire Department.

13.    Defendant City of Moline has employed Defendant Scott Houzenga ("Houzenga") at all times material hereto. Defendant Houzenga currently holds the position of Firefight/Engineer Chief with the City of Moline Fire Department.

14.    Defendant City of Moline is responsible for the acts of Defendants Acri, Zelnio, Wendt, Parker, Irby, and Houzenga who were acting within the scope of their agency and employment with the City of Moline and pursuant to a policy, custom, and/or pattern of harassment, discrimination, and retaliation.

15.    Defendants Acri, Zelnio, Wendt, Parker, Irby, and Houzenga have acted under color of state law at all material times hereto.

### Facts Upon Which Plaintiff's Claims Are Based

16.    Plaintiff Allen has been employed by the City of Moline since October 1993.

17.    In 2006, Plaintiff tested for Battalion Chief and was subsequently promoted to Battalion Chief based on merit testing.

18.    Plaintiff Todd Allen is married to Heather Allen and has been since June 5, 2010.

19.     Heather Allen began working as a firefighter/paramedic for the City of Moline on or about May 17, 2004.

20.     Heather Allen was subjected to sexual harassment from the beginning of her employment with the City of Moline Fire Department, until her constructive discharge from the hostile work environment. Male firefighters and members of the International Association of Firefighters Local #581, subjected Heather Allen to sexual harassment and a hostile work environment on a continuing and ongoing basis, including but not limited to: subjecting her to pornographic material, whereas male employees were watching pornography in the fire station on City time; derogatory comments based on her gender; not having separate bathroom facilities for women; two male employees sent Heather Allen two postcards stating: "Go Fuck Yourself" and the other "Ditto;" male employees also stalked Heather Allen at her home, and spread disparaging rumors about her; and the Union refused to represent her as part of the discrimination and retaliation.

21.     Defendant Houzenga (among others) was directly involved in the sexual harassment, discrimination, and retaliation against Heather Allen.

22.     Plaintiff Todd Allen supported Heather Allen's complaints of sexual harassment and discrimination, along with complaints of harassment and discrimination by other women by reporting those complaints up the chain of command and trying to ensure that the complaints were addressed and remedial action taken to stop the harassment.

23.     After Plaintiff Todd Allen supported Heather Allen's complaints of sexual harassment and discrimination, Defendant Houzenga started retaliating against Plaintiff Todd Allen.

24.     Defendant Houzenga elicited others to participate in the retaliation against Plaintiff, including the other named individual Defendants.

25.     Many of the same individuals that were involved in the sexual harassment against Plaintiff Todd Allen's wife are also involved in the ongoing retaliation and harassment against Plaintiff.

26.     Defendant Houzenga currently works on Defendant Battalion Chief Irby's shift. Defendants Houzenga and Irby have been conspiring to retaliate against Plaintiff and involving certain members of the City Council in the retaliation, including Defendant City Council members/Aldermen Acri, Wendt, Zelnio, and Parker.

27.     Plaintiff Todd Allen has been subject to numerous acts of retaliation in the form of harassment because of his familial association with Heather and his support of her and other women's complaints of workplace harassment, sexual harassment and retaliation, and his attempts to get City officials to take effective remedial action required under state and federal law and the United States Constitution.

28.     Defendants have also subjected Plaintiff Todd Allen to numerous acts of retaliation in the form of harassment because of the fact that he is non-political, and did not and does not support Acri in her run for Mayor.

*The Political Climate*

29.     It is known that Plaintiff Todd Allen is not affiliated with and does not support Defendant Acri for Mayor.

30.     Defendant Acri attempted to get on the ballot for Mayor, but failed to comply with State of Illinois election law with respect to her petitions, and she was removed from the ballot. Defendant Acri is currently running as a "write-in" candidate.

31.     Defendant Acri was represented by the law firm of Lane & Waterman, LLP, which is the same firm that is "investigating" Defendant Irby's and Houzenga's retaliatory allegations of timekeeping abuse against Plaintiff as described in more detail below. The City of Moline is now paying Defendant Acri's firm on her mayoral petitions for this retaliatory investigation, which is in the least an appearance of a conflict and impartial investigation.

32.     Defendant Acri is and has been conspiring with Defendants Houzenga and Irby and the other Defendants to retaliate against Plaintiff and using the investigation as a means to try to gain political favor in her run for Mayor as a write-in candidate.

33.     Defendants Acri and Parker, and other members of the City Council, have also retaliated and conspired to retaliate against other employees of the City of Moline that have taken positions adverse to Acri's political run for Mayor. Specifically, the City of Moline, Acri and others retaliated against the former City Clerk, who asked for an investigation into wrongdoing relating to the election by some of the City Council

members. After she requested an investigation and testified against Acri, she was placed on administrative leave.

### *Timekeeping Investigation*

34.     In March 2016, the City of Moline conducted an investigation into allegations of timekeeping irregularities for the Fire Department.

35.     The investigation found no misconduct or wrongdoing by Plaintiff.

36.     The City also found the following: the payroll system for the Fire Department is flawed and allowed unintentional timekeeping errors by several employees in management positions, as well as the clerical errors on some entries by the secretary and inadvertent miscoding; the Naviline system is inherently flawed; fire department employees were not adequately trained on the system; fire department daily manpower sheets everyone has access to and can be easily changed and are not an "official" record of an employees schedule; and the conclusion was reached that the Fire Department needs a new integrated system for timekeeping.

### *Discrimination & Retaliation Against Plaintiff*

37.     Each Defendant individually, collectively, and through conspiring with others, engaged in one or more of the following acts of retaliation against Plaintiff:

a.      From 2012 through 2014, Defendant Houzenga initiated a malicious and false prosecution against Plaintiff. Defendant Houzenga filed a civil lawsuit against Plaintiff for intentional infliction of emotional distress. Defendant Houzenga's complaint against Plaintiff Todd

Allen was dismissed as being "without merit." There was no probable cause for claim against Plaintiff. Defendant Houzenga's institution of judicial proceedings against Plaintiff was malicious and retaliatory, as there was no probable cause supporting the initiation of such proceedings.

b.     Defendants Houzenga, Irby, and others have defamed Todd to the public, other members of the Department, and agents of the City.

c.     In February 2015, Houzenga threatened Todd in front of his son at a school event; Plaintiff Todd Allen reported this incident.

d.     Immediately following Plaintiff Todd Allen's complaints against Defendant Houzenga over Houzenga threatening him and his son at his son's school, Plaintiff Todd Allen's house was vandalized and a window broken. Plaintiff Todd Allen had to use his personal time because he could not leave his family at home alone that night.

e.     In March of 2015, another employee complained that Defendant Houzenga had cheated on a test for EMS. Houzenga called the employee "Todd's boy." Defendants Houzenga and Irby then retaliated against the employee that turned Houzenga in for cheating. No action was taken against Defendants Houzenga or Irby for the retaliation against the whistleblowing employee that turned Houzenga in for cheating.

f.    In July 2015, Defendant Acri made false allegations against Plaintiff Todd Allen, which were published in the paper. As a result of Defendant Acri's allegations, the City spent over $35,000 to defend the allegations. It was found that Defendant Acri's allegations were false.

g.    In March 2016, a formal inquiry was raised over concerns with respect to Plaintiff's timekeeping and use of flex time. Plaintiff received flex time, which had previously been approved by the Chief for many years prior. The investigation resulted in a finding of no wrongdoing by Plaintiff, clerical errors on some entries by the secretary and inadvertent miscoding, and that the timekeeping system for the Fire Department was flawed and needed upgrading.

38.    Defendant Irby continued to make false allegations against Plaintiff claiming that he engaging in misconduct and stole time, when in fact, Plaintiff did not, and despite the fact that Plaintiff was cleared of any wrongdoing in the investigation.

39.    Defendant Irby was provided with unfettered access to Plaintiff's personnel records and private information, as well as with unfettered access to the Naviline system. Defendant Irby provided false information to the City of Moline City Council in furtherance of his retaliation against Plaintiff.

40.    On January 22, 2017, attorney Mikki Schiltz of Lane & Waterman, LLP, interviewed Plaintiff Todd Allen of alleged timekeeping issues. Schiltz brought up the

10

prior complaints by Plaintiff Todd Allen against Defendants Houzenga and Irby. Schiltz also noted Plaintiff's concerns that Defendant Irby was given unfettered and complete access to the Naviline (timekeeping) system, for which no one else in the Fire Department has.

41.    Defendant Irby has also been provided with personal and private information about Plaintiff Todd Allen that a co-worker or non-HR representative should not have access to. Plaintiff Todd Allen has complained about this as well.

42.    In the January 22, 2017 interview by Schiltz of Plaintiff Todd Allen, Plaintiff also raised his concerns about Defendants Irby and Houzenga continuing to retaliate and harass Plaintiff Todd Allen because of his familial relationship with Heather Allen and his support of employees' complaints of harassment and retaliation against Defendants Houzenga and Irby.

43.    As part of Schiltz's line of questioning during the interview, Schiltz brought up Todd Allen's wife, Heather Allen, as part of the numerous questions asked, despite the fact that the "investigation" was supposed to be on timekeeping issues and not Plaintiff's wife.

44.    Defendants initiated this frivolous, discriminatory, and retaliatory investigation of alleged timekeeping issues, even though Plaintiff had already been exonerated of any wrongdoing.

45.    In fact, Schiltz, Lane & Waterman LLP, and the City Council have been informed that there was already an investigation into timekeeping concerns, and that

there was a finding of no wrongdoing.

46.    This second "investigation" conducted by Lane & Waterman, which was initiated by Defendants Irby, Acri, Wendt, and Parker, has been used by Defendants as a political talking point to try to influence the election in Defendant Acri's favor and to retaliate against Plaintiff Todd Allen.

47.    Defendants have retaliated and conspired to retaliate against Plaintiff Todd Allen because of his familial association with Heather Allen and because he supported her and other women's complaints of sexual harassment and discrimination and because of the fact that he does not support Defendant Acri politically.

48.    Other similarly situated employees not in the same protected class as Plaintiff engaged in similar and more egregious conduct as that erroneously and maliciously alleged against Plaintiff, and Defendants did not initiate an investigation against them or cause them to be investigated. Defendants also did not subject those employees to defamatory and disparaging comments, as they did with Plaintiff.

49.    As a result of Defendant's conduct, Plaintiff has suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

## COUNT I

### (42 U.S.C. § 1983 Violation of First and Fourteenth Amendment

### v. All Defendants)

50.     Plaintiff restates and realleges by reference paragraphs 1 through 49 above as though fully set forth herein against all Defendants.

51.     Plaintiff brings his familial association claim under the First Amendment, and in the alternative, the due process clause to the Fourteenth Amendment.

52.     At all times relevant hereto, Defendants Acri, Zelnio, Wendt, Parker, Irby, and Houzenga acted as agents, employees, supervisors, and final policymakers for the City of Moline.

53.     The conduct of Defendants was and became the custom and practice of Defendants.

54.     Plaintiff has a liberty right to have intimate human relationships with his wife (right to "familial association").

55.     Plaintiff was deprived of his right to familial association when Defendants retaliated and conspired to retaliate against Plaintiff because of his association with his wife.

56.     Defendants' actions constituted an unwarranted and undue interference into Plaintiff's family relationships, and an unconstitutional infringement upon Plaintiff's due process and/or First Amendment right to familial association.

57.     The actions of Defendants against Plaintiff violate his due process right to be free from retaliation because of his association with his wife under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

58.     The actions of Defendants against Plaintiff violate Plaintiff's right to be free from retaliation because of his association with his wife under the First Amendment of the United States Constitution and 42 U.S.C. § 1983.

59.     The conduct of Defendants violated Plaintiff's right to familial association as provided by the First and Fourteenth Amendment to the Constitution.

60.     Defendants intentionally retaliated against Plaintiff with malice or reckless indifference to Plaintiff's civil rights, thereby entitling Plaintiff to punitive damages.

61.     The actions of Defendants have caused Plaintiffs great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

62.     The actions of the Defendants were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured by 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff respectfully requests:

A.      All wages and benefits Plaintiff would have received but for the discrimination and retaliation, including pre-judgment interest;

B.      Compensatory damages in an amount to be determined at trial;

C.      Defendants be required to pay pre-judgment interest to Plaintiff on these damages;

D.     A permanent injunction enjoining the Defendants from engaging in the discriminatory and retaliatory practices complained of herein;

E.     A permanent injunction requiring Defendants to adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

F.     The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G.     Punitive damages as allowed by law;

H.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

I.     Such other relief as the Court may deem just or equitable.

## COUNT II

### (42 U.S.C. § 1983 Violation of First Amendment

### v. All Defendants)

63.     Plaintiff restates and realleges by reference paragraphs 1 through 49 above as though fully set forth herein against all Defendants.

64.     At all times relevant hereto, Defendants Acri, Zelnio, Wendt, Parker, Irby, and Houzenga acted as agents, employees, supervisors, and final policymakers for the City of Moline.

65.     The conduct of Defendants was and became the custom and practice of Defendants.

15

66.     Plaintiff has a First Amendment right to be non-affiliated with a candidate.

67.     The actions of Defendants against Plaintiff violate Plaintiff's right to be free from retaliation under the First Amendment of the United States Constitution and 42 U.S.C. § 1983.

68.     Defendants intentionally retaliated against Plaintiff with malice or reckless indifference to Plaintiff's civil rights, thereby entitling Plaintiff to punitive damages.

69.     The actions of Defendants have caused Plaintiffs great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

70.     The actions of the Defendants were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured by 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff respectfully requests:

A.     All wages and benefits Plaintiff would have received but for the discrimination and retaliation, including pre-judgment interest;

B.     Compensatory damages in an amount to be determined at trial;

C.     Defendants be required to pay pre-judgment interest to Plaintiff on these damages;

D.     A permanent injunction enjoining the Defendants from engaging in the discriminatory and retaliatory practices complained of herein;

E.     A permanent injunction requiring Defendants to adopt employment practices and policies in accord and conformity with

the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

F.     The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G.     Punitive damages as allowed by law;

H.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

I.     Such other relief as the Court may deem just or equitable.

## COUNT III

### (42 U.S.C. § 1983, Conspiracy

### v. All Defendants)

71.     Plaintiff restates and realleges by reference paragraphs 1 through 49 above as though fully set forth herein.

72.     As described herein, Defendants Acri, Zelnio, Wendt, Parker, Irby, and Houzenga agreed to retaliate against Plaintiff with Defendants Irby and Houzenga.

73.     Defendants Irby and Houzenga agreed with Defendant Acri to retaliate against Plaintiff and to violate Plaintiff's rights under the First and Fourteenth Amendments.

74.    Defendants Irby and Houzenga conspired with Defendant Acri, Wendt, Zelnio, Parker, and with one another as set forth herein to violate Plaintiff's civil and Constitutional rights.

75.    The individual Defendants, acting together and under color of law, reached an understanding and agreement, engaged in a course of conduct, and otherwise conspired among and between themselves and with other unnamed and/or unknown co-conspirators, to deprive Plaintiff of his Constitutional rights, and did deprive him of his Constitutional rights, as alleged herein.

76.    In furtherance of this conspiracy, the individual Defendants committed overt acts as alleged herein, including but not limited to: arbitrarily and maliciously singling out Plaintiff for disparate treatment in direct violation of Plaintiff's First and Fourteenth Amendment rights; interfering with Plaintiff's ability to effectively perform his job duties; subjecting Plaintiff to malicious and false accusations and investigations on allegations that had already been investigated and a finding on no misconduct or wrongdoing; and making false and disparaging statements about Plaintiff.

77.    Defendants acted in concert to violate Plaintiff's Constitutional rights, and thereby formed a conspiracy to deprive Plaintiff of his Constitutional rights.

78.    The actions of Defendants against Plaintiff have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

A.      All wages and benefits Plaintiff would have received but for the discrimination and retaliation, including pre-judgment interest;

B.      Compensatory damages in an amount to be determined at trial;

C.      Defendants be required to pay pre-judgment interest to Plaintiff on these damages;

D.      A permanent injunction enjoining the Defendants from engaging in the discriminatory and retaliatory practices complained of herein;

E.      A permanent injunction requiring Defendants to adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

F.      The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G.      Punitive damages as allowed by law;

H.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

I.      Such other relief as the Court may deem just or equitable.

## COUNT IV

### Defamation

### (v. Defendants Irby, Zelnio and Parker)

79.     Plaintiff hereby realleges and incorporates paragraphs 1 through 49 of this

Complaint, as if fully set forth herein against Defendants Irby, Zelnio, and Parker.

80.     In or October 2016, Defendant Zelnio made false statements to others that were not privileged and that were made public that Plaintiff had "stole" time and that the City Administrator was let go from the City because she covered up that Plaintiff had "stole" time.

81.     On or about November 1, 2016, Defendant Irby made statements to others that were not privileged and that were false suggesting that Plaintiff had an affair and that he stole time from the City.

82.     Defendant Irby made other public false statements about Plaintiff stating that he stole time and was having an affair.

83.     On or about January 10, 2017, Defendant Parker made false statements to other individuals at a local bar that another employee was fired because he signed off on Plaintiff stealing time.

84.     On or about January 10, 2017, Plaintiff was informed that Defendant Irby had made false statements that Plaintiff was having an affair and

85.     The City had already done an investigation of time keeping issues in the Fire Department, not just related to Plaintiff, but related to other Fire Department employees, and Plaintiff was exonerated of any misconduct. In fact that investigation found: the payroll system for the Fire Department is flawed and allowed for mistakes and unintentional timekeeping errors by several employees in management positions; the Naviline system is inherently flawed; no one is trained on the system; fire department daily manpower sheets everyone has access to and can be easily changed

and are not an "official" record of an employees schedule; and the conclusion was reached that the Fire Department needs a new integrated system for timekeeping.

86.     All of the above statements falsely accuse Plaintiff of a criminal offense, of being unable to perform or wanting integrity to discharge the duties of his employment and/or prejudiced Plaintiff in his trade, profession or calling.

87.     Defendants are guilty of one or more of the following acts:

a.     Defamed or portrayed Plaintiff in a false light by making false statements about his ability to be a good employee, statements which impute an inability by plaintiff to perform the duties of his employment, statements which impute to plaintiff a lack of integrity, and/or statements which impute to plaintiff criminal activity; and

b.     Otherwise intentionally defamed or portrayed Plaintiff in a false light.

88.     The above actions were committed intentionally, willfully, wantonly and/or with malice or with such gross negligence as to indicate an intentional and/or willful and wanton disregard for the rights of Plaintiff.

89.     As a direct and proximate result of one or more of the above mentioned acts, Plaintiff has in the past and will in the future suffer loss of employment, income, benefits and other emoluments of employment.

90.     As a direct and proximate result of one or more of the above mentioned acts, Plaintiff has in the past and will in the future suffer pain and suffering, distress, physical

symptoms or illness, embarrassment, anguish and humiliation and damage to his reputation.

**WHEREFORE**, Plaintiff respectfully requests:

A.      All wages and benefits Plaintiff would have received but for the defamation, including pre-judgment interest;

B.      Compensatory damages in an amount to be determined at trial;

C.      Defendants be required to pay pre-judgment interest to Plaintiff on these damages;

D.      A permanent injunction enjoining the Defendants from engaging in the retaliatory practices complained of herein;

E.      Punitive damages as allowed by law;

F.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

G.      Such other relief as the Court may deem just or equitable.

Respectfully Submitted,

TODD ALLEN

*/s/Dana L. Kurtz*

_____

One of Plaintiff's Attorneys

Dana L. Kurtz, Esq. (6256245)
KURTZ LAW OFFICES, LTD.
32 Blaine Street
Hinsdale, IL 60521
Phone: 630.323.9444
Facsimile: 630.604.9444
E-mail: dkurtz@kurtzlaw.us