IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| TODD ALLEN,<br>    Plaintiff,<br><br>v.<br><br>CITY OF MOLINE, *et al.*,<br>    Defendants. | Case No. 4:17-cv-04066-JES-JEH |

### ORDER

Now before the Court are the Defendants' Partial Motion to Dismiss Plaintiff's Complaint (D. 11)[1] and the Plaintiff's Response in Opposition (D. 12). For the reasons set forth below, the Defendants' Motion (D. 11) is DENIED in part and GRANTED in part.

### BACKGROUND

The Plaintiff, Todd Allen, filed his Complaint in February 2017 against the City of Moline and the following individuals: Alderman Stephanie Acri, Alderman John Zelnio, Alderman Mike Wendt, Alderman David Parker, Kevin Irby, and Scott Houzenga. (D. 1). The Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging violations of his First and Fourteenth Amendment rights and Conspiracy by all Defendants. *Id.* He further alleges defamation by Parker, Irby, and Zelnio.

The Plaintiff has been a firefighter for the City of Moline since 1993 and is currently serving as a Battalion Chief. Defendants Irby and Houzenga are also City of Moline firefighters. Defendants Acri, Zelnio, Wendt, and Parker served as elected alderman for the City of Moline during all relevant times. The Plaintiff's now-wife, Heather Allen ("Heather"), began working

---

[1] Citations to the Docket in this case are abbreviated as "D. __."

for the City of Moline fire department in 2004, when the Plaintiff was already serving as Battalion Chief.

The Plaintiff alleges the Defendants retaliated against him when: (1) Houzenga filed a lawsuit against him; (2) Houzenga, Irby, "and others" defamed him; (3) Houzenga threatened him in front of his son; (4) an unknown person vandalized his house and broke some of his windows; (5) Houzenga called an unidentified employee "Todd's boy" after the unidentified employee accused Houzenga of cheating on a work-related test—resulting in Houzenga and Irby retaliating against the employee; (6) false and defamatory statements about him were published; and (7) the Defendants made accusations and initiated investigations into him forging timekeeping records. (D. 1 at pp. 8-10).

The Plaintiff claims that Heather was subjected to sexual harassment at the fire department until she was constructively discharged in 2010. He says he reported Heather's complaints up the chain of command and attempted to ensure they were addressed. The Plaintiff asserts that Houzenga was one of the individuals sexually harassing Heather. According to the Plaintiff, Houzenga filed a lawsuit against him in 2012, alleging intentional infliction of emotional distress, which was dismissed in 2014.

In March 2016, the City conducted an initial investigation into allegations of timekeeping irregularities within the fire department. The Plaintiff's timekeeping and use of flex time were investigated. While the Plaintiff was not found to have engaged in any misconduct, the department's payroll system was found to be flawed, resulting in unintentional timekeeping errors, clerical errors, and inadvertent miscoding.

In the wake of the investigation, the Plaintiff alleges that Irby falsely accused him of engaging in misconduct and stealing time off. He says Irby provided this false information to the

2

City Council.  Irby, Acri, Wendt, and Parker initiated a second investigation into timekeeping irregularities within the department, hiring the law firm of Lane & Waterman to conduct it.  The Plaintiff claims the second investigation was used by the Defendants to influence the City's 2017 mayoral election.  Acri was running in that election as a write-in candidate.  The Plaintiff insists he had no affiliation with Acri's candidacy for mayor.

The Plaintiff further alleges that in approximately October 2016, Zelnio made false statements that he stole time off from the City.  He also claims that sometime around November 2016, Irby made the same allegation and falsely stated that the Plaintiff had an affair.  Additionally, the Plaintiff claims that in January 2017, Parker falsely told people that a City employee was fired for approving the Plaintiff's inaccurate timekeeping records.

During the second investigation into timekeeping irregularities, an attorney from Lane & Waterman interviewed the Plaintiff.  The attorney mentioned the Plaintiff's prior complaints about Houzenga and Irby harassing him and asked questions about Heather.

The Defendants now move to dismiss the Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Defendants argue that each of the Plaintiff's counts are faulty.  Specifically, they claim: (1) Count I fails to state a claim, or, in the alternative, all of the individual Defendants are entitled to qualified immunity; (2) Count II only states a claim for retaliatory investigation and fails to state a claim against Zelnio or Houzenga; (3) Count III is barred by the intracorporate conspiracy doctrine or otherwise fails to state a plausible entitlement to relief; and (4) the claims in Count IV are barred by absolute privilege.  (D. 11 at pp. 6-10).

## LEGAL STANDARD

In reviewing the Defendants' Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the Plaintiff's factual allegations as true.  *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007). Allegations stated in the form of legal conclusions, however, are insufficient to survive a motion to dismiss. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012). A complaint must contain a short and plain statement of the plaintiff's claim, sufficient to show entitlement to relief and to notify the defendants of the allegations against them. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). This standard is met if the plaintiff describes in sufficient factual detail enough to suggest a right to relief beyond a speculative level. *Id.; Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Srvs.*, 496 F.3d 773, 776 (7th Cir. 2007). In short, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original).

## ANALYSIS

In Count I, the Plaintiff alleges that all of the Defendants violated his First and/or Fourteenth Amendment rights. (D. 1 at pp. 13-15). Specifically, he claims his right to familial association was violated by the Defendants' retaliatory acts. *Id.* The Defendants argue that Count I fails to state a claim, or, in the alternative, the individual Defendants are entitled to qualified immunity. (D. 11 at pp. 6-8). The parties have divergent starting points for their analyses of the issue. The Defendants assert that the only proper analysis is "under the due process clause of the Fourteenth Amendment, as opposed to the First Amendment." *Id.* at pg. 6. The Plaintiff, on the other hand, claims he has sufficiently pled a *prima facie* case on Count I under the First Amendment, or, alternatively, under the Fourteenth Amendment. (D. 12 at pp. 2-6).

The Plaintiff's claim in Count I is "based on retaliatory action by Defendants for his relationship with his wife and his support for her sexual harassment complaints[.]" *Id* at pg. 5. In his view, his reporting Heather's sexual harassment complaints and offering her support during the process were expressions that are protected under the First Amendment. The Plaintiff finds his scenario analogous to one analyzed by the Sixth Circuit in *Adkins v. Bd. of Educ. Of Magoffin County, Ky*. 982 F.2d 952 (6th Cir. 1993). In *Adkins*, the wife and secretary of a high school principal was allegedly fired for supporting her husband, who opposed the actions of a superintendent. *Id.* at 956. The Sixth Circuit found that the plaintiff "had a liberty interest in not being denied employment for exercising her First Amendment right to freedom of association." *Id.*

Unlike in *Adkins*, the Plaintiff here is not alleging he was denied employment for exercising his First Amendment rights. Rather, he is claiming that supporting his wife resulted in retaliation against him, resulting in his right to familial association being violated. The Seventh Circuit has yet to recognize a First Amendment familial association claim. See *Norman-Nunnery v. Madison Area Technical College*, 625 F.3d 422 (7th Cir. 2010). While *Norman-Nunnery* acknowledged that the Second Circuit applied the First Amendment to a similar claim in *Adler v. Pataki*, 185 F.3d 35 (2nd Cir. 1999), the Seventh Circuit declined to do so in *Norman-Nunnery* because the Plaintiff's claim failed for lack of evidence. *Norman-Nunnery*, 625 F.3d at 434. The Seventh Circuit previously suggested, however, that familial association claims similar to the one raised here arise under the Fourteenth Amendment, not the First. *Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005).

Here, much like in *Norman-Nunnery*, at this phase of the litigation the Court does not have sufficient evidence to determine whether the retaliatory acts alleged by the Plaintiff were

5

done because he supported Heather and reported her allegations of sexual harassment. Accepting the Plaintiff's allegations as true, however, it is still possible for him to prove that the retaliation he alleges was done as a result of his support for Heather. After all, discovery is still on-going in this matter. Once discovery has closed, the parties will be better able to make their respective arguments, and the Court determine the appropriate framework for the Plaintiff's claim on this issue.

The Defendants also contend that they are entitled to qualified immunity in the alternative. (D. 11 at pp. 7-8). The Plaintiff merely dismisses this argument as "frivolous." (D. 12 at pg. 7). Qualified immunity only fails to attach when an official's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). The specific details of the incidents at issue are not presently before the Court. This makes conducting a constitutional analysis of the events impossible for the time being. Again, accepting all of the Plaintiff's allegations as true and assuming the Defendants engaged in the retaliatory behavior as a result of the Plaintiff's support for Heather, at least some of the allegations touch upon statutory or constitutional rights of which the Defendants should have reasonably known the Plaintiff was entitled. As such, the Defendants' Motion to Dismiss Count I is DENIED.

Next, the Plaintiff alleges in Count II that the Defendants further violated his First Amendment rights. (D. 1 at pp. 15-17). In this instance, he claims they violated his "right to be non-affiliated with a candidate." *Id.* at pg. 16. The Defendants argue that Count II only states a claim for retaliatory investigation and fails to state claims against Zelnio or Houzenga. (D. 11 at pp. 8-9). The Plaintiff counters that Count II is properly plead because the First Amendment protects against retaliatory acts that chill speech and his Complaint sufficiently pleads claims

6

against Zelnio and Houzenga. (D. 12 at pp. 7-10). The retaliating act here being malicious prosecution.

"It is undisputed that political nonaffiliation is a right protected under the first amendment." *Hermes v. Hein*, 742 F.2d 350, 353 n. 3 (7th Cir. 1984) (citing *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980)). Section 1983 creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017). The Defendants' claim that "no malicious prosecution claim may be brought in Illinois under § 1983[]" is entirely reliant on their citation to *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001), which was abrogated by *Manuel*. 137 S. Ct. at 920. It is well established that the Constitution protects citizens from malicious prosecution and that a plaintiff can state a claim for malicious prosecution under § 1983. See, *e.g. Sneed v. Rybicki*, 146 F.3d 478, 480 (7th Cir. 1998). Although there is some question as to whether there is a federal tort of malicious prosecution. See *e.g. Albright v. Oliver*, 510 U.S. 266 (1994). Here, the Plaintiff could have counterclaimed in state court in response to the suit brought against him there by Houzenga. See 735 ILCS 5/2-608. Therefore, a state remedy was available to him, which precludes a malicious prosecution claim here. *Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013).

The Defendants further claim that the Plaintiff's remaining alleged retaliatory acts consist of the Defendants making false allegations or defamatory statements, none of which violate the Constitution. (D. 11 at pg. 8). Indeed, libel and slander are not prohibited by the Constitution. See *Davis v. Chicago*, 53 F.3d 801, 804 (7th Cir. 1995). Accordingly, the Plaintiff's § 1983 claim that his First Amendment right to political non-affiliation was violated, in so far as it is

7

based on libel and slander, is unsustainable. Therefore, the Defendants' Motion to Dismiss Count II is GRANTED in part as to malicious prosecution and libel and slander.

Ultimately, the Defendants also argue that only Irby, Wendt, and Parker are alleged to have engaged in unconstitutional actions and therefore Count II should be dismissed against Zelnio and Houzenga outright. (D. 11 at pg. 9). A valid § 1983 claim requires the defendant's personal involvement in the alleged constitutional deprivation. *Stringer v. Rowe*, 616 F.2d 993, 1000-01 (7th Cir. 1980). This is not, however, a strictly interpreted standard. It is sufficient for the deprivation of a constitutional right to occur at a defendant's direction or with their knowledge and consent. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). The allegations against Zelnio and Houzenga include the claim that Houzenga conspired with others—Zelnio among them—to retaliate against the Plaintiff. (D. 1 at pg. 6). As such, the Plaintiff's Count II claim against Zelnio and Houzenga is sufficiently pled and survives the Defendants' Motion to Dismiss. The Defendants' Motion to Dismiss Count II is therefore DENIED in part as to their claim that Zelnio and Houzenga are not alleged to have engaged in unconstitutional acts, in this instance, interfering with the Plaintiff's First Amendment right to political non-affiliation.

In Count III, the Plaintiff alleges that all of the Defendants conspired against him. (D. 1 at pp. 17-19). The Defendants argue that Count III is barred by the intracorporate conspiracy doctrine or otherwise fails to state a plausible claim entitling him to relief. (D. 11 at pp. 9-10). The Plaintiff responds by asserting that the intracorporate conspiracy doctrine does not apply in this instance. (D. 12 at pp. 10-11).

Under the intracorporate conspiracy doctrine, an agreement between or among agents of the same legal entity is not an unlawful conspiracy, provided the agents acted within their official capacities. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). The Plaintiff claims that he alleged

8

in his Complaint that the Defendants "discriminated and retaliated against [him] based on their personal bias." (D. 12 at pg. 11) (citing D. 1 ¶¶ 22, 23, 25, 28, 35, 37(a-g)). This is a drastic misrepresentation of the Complaint.

The paragraphs cited by the Plaintiff contain no reference to the Defendants' personal biases. Indeed, the Plaintiff does not reference their biases or agendas anywhere in his Complaint. Moreover, he ignores his own explicit allegations to the contrary, that the Defendants were acting within their official capacities. For example, the Plaintiff alleged in his Complaint that the "City of Moline is responsible for the acts of Defendants Acri, Zelnio, Wendt, Parker, Irby, and Houzenga who were acting within the scope of their agency and employment with the City of Moline and pursuant to a policy, custom, and/or pattern of harassment, discrimination, and retaliation." (D. 1 at pg. 4). He went on to specify that "Defendants Acri, Zelnio, Wendt, Parker, Irby, and Houzenga have acted under color of state law at all material times hereto." *Id.* The Plaintiff even reiterates in response to the Defendants' Motion to Dismiss that the Defendants were acting "under color law" during the course of their alleged conspiracy. (D. 12 at pg. 11-12).

Since they were acting within the scope of their employment with the City pursuant to a policy, custom, and/or pattern of harassment, discrimination, and retaliation, according to the Plaintiff, the Defendants cannot be said to have simultaneously acted outside their official capacities. As a matter of law, the Plaintiff's allegations cannot constitute an unlawful conspiracy on the part of the Defendants. As such, the Defendants' Motion to Dismiss Count III of the Plaintiff's Complaint is GRANTED. The Court need not address the Defendants' remaining arguments pertaining to Count III.

9

Finally, in Count IV, the Plaintiff alleges Defendants Irby, Zelnio and Parker defamed him. (D. 1 at pp. 19-22). The Defendants argue the Plaintiff's defamation claims are barred by absolute privilege. (D. 11 at pg. 10). The Court agrees with the Defendants.

Under Illinois law, government officials have absolute immunity from defamation claims brought against statements which are reasonably related to the official's job responsibilities. *Novoselsky v. Brown*, 822 F.3d 342, 349-50 (7th Cir. 2016). The Defendants are thus immune from liability only for communications made within the scope of their official functions and duties. As discussed previously, the Plaintiff insists that the Defendants were acting within the scope of their employment at all relevant times. (D. 1 at pg. 4). Accepting the well plead facts from the Plaintiff's Complaint as true, the Defendants' allegedly defamatory communications were reasonably related to their job responsibilities. Accordingly, the Defendants are entitled to absolute immunity from defamation claims brought against any of their alleged communications. Thus, the Defendants' Motion to Dismiss Count IV of the Plaintiff's Complaint is GRANTED.

Given the facts presented in the Complaint, which the Court must accept as true, the Plaintiff has sufficiently pled Count I and a portion of Count II. As a matter of law, however, he has not sufficiently plead portions of Count II or any portion of Count III or Count IV.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion (D. 11) is DENIED in part and GRANTED in part.

*It is so ordered.*

Entered on November 21, 2017

  s/ James E. Shadid
James E. Shadid
Chief United States District Judge